# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**GERRESE DANIELS,**

      **Plaintiff,**

                                  **Case No.  8:05-cv-1392-T-30TBM**

**v.**

**PRISON HEALTH SERVICES, INC.,**
**et al.,**

      **Defendants.**

_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant Sarasota County Sheriff William F. Balkwill's Motion to Dismiss Count XI of the Amended Complaint and Memorandum of Law (Dkt. #42) and Plaintiff's Response to Defendant Sheriff's Motion to Dismiss and Incorporated Memorandum of Law (Dkt. #44).  The Court, having considered the motion and response, and being otherwise fully advised, finds that the motion should be granted.

## I.     Background.

### A.     Plaintiff's Allegations.

On June 5, 2003, Plaintiff was an inmate in the Sarasota County Jail.  Plaintiff alleges that Matthew O'Kon and Michelle Hole, correctional officers with the Sarasota County's Sheriff's Office ("SCSO"), intentionally threw Plaintiff head first into a concrete wall and then Officer O'Kon stepped on his neck.  Subsequently, on June 5, 2003 at approximately

4:10 a.m., Monica Welch, L.P.N., a nurse working for Prison Health Services, Inc ("PHS"), was called to examine Plaintiff.  PHS was under contract with the SCSO to provide medical care to the inmates at the infirmary.  Welch noted that Plaintiff was lying on his back on the floor and claimed that he was trying as hard as he could to move his legs and could not.  Welch also noted that Plaintiff was turning his head from side to side and that Plaintiff was able to feel her touch at the bottom of his foot.  Welch left Plaintiff's cell and referred him to the charge nurse.  On the same day, Plaintiff was seen by Sabrina Lasker, R.N.  At that time, Plaintiff claimed to be paralyzed.  Lasker documented that Plaintiff's arms and legs moved without any response of pain and that Plaintiff moved his legs when a sharp object was stuck in his foot.  As a result, Lasker determined that Plaintiff was "faking it."  Later, on the same day, Plaintiff was placed on a bus bound for the Central Florida Reception Center ("CFRC").  Plaintiff made complaints to the officers on the bus regarding his condition.  Upon arrival at the CFRC, state correctional officers identified that Plaintiff was hurt and could not move.  CFRC medical staff and Emergency Medical Service of Orange County decided to life flight Plaintiff to the Orlando Regional Medical Center where it was discovered that Plaintiff had severed the 4th and 5th vertebrae in his back.  Surgery was performed to fuse the vertebrae.  Post surgery, Plaintiff suffered from complete paralysis, was placed on a ventilator, and nearly died.  Currently, Plaintiff claims to suffer from near-complete paralysis with some use of his upper extremities.

Plaintiff has brought numerous claims against the defendants, including a § 1983 claim against the SCSO and PHS for a failure to train PHS employees in the proper way to

medically treat inmates (Count XI).  More specifically, Plaintiff has brought Count XI against "William Balkwill in his official capacity as Sheriff of Sarasota County Sheriff's Office."  Plaintiff has not alleged claims in this suit against William Balkwill individually.  Further, Plaintiff has not alleged that William Balkwill had any personal involvement in the acts depriving Plaintiff of his constitutional rights to proper and prompt medical care.

> **B.**     **Defendant's Arguments.**

Defendant, William Balkwill in his official capacity as Sheriff of Sarasota County Sheriff's Office ("Defendant"), has filed a motion to dismiss Count XI of the Amended Complaint.  Defendant argues that the medical care providers accused of providing improper or untimely medical care were employees of PHS, not SCSO.  Further, Defendant argues that SCSO does not provide medical care for the inmates, nor does Defendant have a duty or means to train the medical care providers for the inmates.  Rather, Defendant reasons that it is PHS and its employees that have a duty to render nursing and medical care services in accordance with the prevailing professional standard of care.  Defendant also points out that Sheriff Balkwill was not personally involved in the alleged acts depriving Plaintiff of medical care.  Finally, Defendant asserts that the SCSO is not responsible under a theory of *respondeat superior* for the actions or inactions of the medical care provider employees of PHS.

II.     **Legal Standard.**

In apprising the sufficiency of a complaint on a motion to dismiss, the accepted rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *South Florida Water Mgt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996). The Court must view the complaint in the light most favorable to the plaintiff and construe the allegations in the complaint as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *Hunt v. American Bank & Trust Co. of Baton Rouge, La.*, 783 F.2d 1011, 1013 (11th Cir. 1986). Conclusory allegations "will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief. . . . However, the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent." *Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983) (citations omitted).

### III.   Legal Analysis.

### A.   Section 1983 Claim - William Balkwill, Individually.

Defendant argues that Plaintiff has failed to plead an actionable Section 1983 claim. In order for a Plaintiff to successfully plead a Section 1983 claim based on an official's failure to perform an affirmative duty two elements must be pled.   *See Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 794 (11th Cir 1987).   First, the failure to act must be a substantial factor leading to the constitutional deprivation.   *See id.*   Second, the official having responsibility to act must have acted with deliberate indifference.   *See id.*   The Eleventh Circuit has clarified what a plaintiff must demonstrate to prove deliberate indifference.   *See McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).   A plaintiff must prove that the defendant: (1) had subjective knowledge of the risk of harm; (2) disregarded that risk; and (3) was more than merely negligent in disregarding that risk.   *See id.*

Furthermore, an official may be found personally liable under a § 1983 claim if the official establishes or utilizes a policy or custom that results in or plays a role in the alleged delay of treatment and deliberate indifference shown towards the plaintiff.   *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705-706.   Accordingly, the sheriff's liability in his individual capacity, if any, would not solely be based upon notions of *respondeat superior.   See id.*

"The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Nelson v. Prison Health Services, Inc.*, 991 F.Supp. 1452, 1460 (M.D. Fla. 1997). "Entitlement to qualified immunity is a question of law to be resolved by the district court prior to trial." *Id*. The first question then is whether the Sheriff was exercising his discretionary authority with regards to the provision of medical treatment to in-mates at the Sarasota County Jail. *See id.* at 1461. "Case law makes it plain that the decision to bestow or deny medical services to pre-trial detainees is a discretionary function for purposes of the qualified immunity analysis." *Id*.

In the Amended Complaint, Plaintiff has failed to allege facts tending to show that William Balkwill personally knew or should have known of Plaintiff's injuries or his subsequent need for emergency medical treatment. It does not appear, however, that Plaintiff has named William Balkwill, individually, as a defendant in this lawsuit. Rather, Plaintiff has brought Count XI against "William Balkwill in his official capacity as Sheriff of Sarasota County Sheriff's Office." Thus, Defendant's argument that the claims in Count XI brought against "William Balkwill in his official capacity as Sheriff of Sarasota County Sheriff's Office" should be dismissed based on William Balkwill's lack of personal knowledge of the Plaintiff's injury is unpersuasive. Such argument would be relevant only if William Balkwill was sued in his individual capacity.

**B.     Section 1983 Claim - William Balkwill in his official capacity as Sheriff of Sarasota County Sheriff's Office.**

In Count XI, Plaintiff asserts a § 1983 claim against Defendants, SCSO and PHS. Specifically Plaintiff alleges as follows: PHS contracted with SCSO to provide medical care

to inmates at the Sarasota County Jail, PHS assumed the role of SCSO as to medical care, SCSO and PHS failed to adequately train PHS employees in the proper way to medically treat inmates, SCSO and PHS's failure to adequately train PHS employees caused Plaintiff's injuries and violated his constitutional right to receive proper medical care, and Plaintiff's injury resulted from the official policies, procedures and customs of Defendants, SCSO and PHS.

A claim against a sheriff in his official capacity is equivalent to a claim against the county. *Pompey v. Broward County*, 95 F.3d 1543, 1545-46 n. 2 (11th Cir. 1996). To assert a § 1983 claim against the county, a plaintiff must demonstrate the violation of a constitutional right caused by enforcement of a policy or custom of the county. *See Greer v. Hillsborough County Sheriff's Department*, 2005 WL 2416031, *1 (M.D. Fla. 2005); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

## 1.     Plaintiff has asserted a violation of a constitutional right.

The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. *See Estelle v. Gamble*, 429 U.S. 97 (1976). This duty is not absolved by contracting with an entity such as Prison Health Services. *See Ancata*, 769 F.2d at 705. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of a health service company.

*See id.* In this sense, the county's duty is non-delegable. *See id.*; *see also Wilson v. Taylor*, 733 F.2d 1539, 1545 (11th Cir. 1984).

In 1990 "it was clearly established that knowledge of the need for medical care constituted deliberate indifference." *Nelson v. Prison Health Services, Inc.*, 991 F.Supp. 1452, 1461, citing *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). Additionally, "the law was clearly established in 1985 that if a reasonable official would have known that certain treatment was necessary, the refusal to provide or a delay in providing that treatment would constitute deliberate indifference and violate the prisoner's eighth amendment rights." *Nelson*, 991 F.Supp. at 1461, citing *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir. 1991).

Plaintiff has sufficiently alleged a violation of his constitutional right to proper medical care.

### 2.    Plaintiff has failed to identify a particular policy or custom of SCSO which resulted in a violation of his constitutional rights.

Defendant argues that Count XI should be dismissed since the Plaintiff fails to identify within the Amended Complaint which specific policy, procedure or custom, if any, of the SCSO caused his injury. Defendant's argument is well taken.

A plaintiff seeking to impose liability on a county under § 1983 must identify a specific municipal "policy" or "custom" that caused the plaintiff's injury. *See Taylor v. Milner*, 2005 WL 1571912 (M.D. Fla. 2005), *see also Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999). If a county establishes or utilizes a policy or custom that results in or plays a role in the alleged delay of treatment and deliberate indifference shown towards an inmate,

then the county may be liable. *See Ancata*, 769 F.2d at 705-06; *see also Monell v. Department of Social Services of the City of New York et al.*, 436 U.S. 658 (1978) (the Supreme Court held that a municipality is liable in a section 1983 action only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.").[1]

Furthermore, if the sheriff's office allows prison health officials that it contracted with to establish such a policy or custom, it may also be liable.[2] *See Trezevant v. City of Tampa*, 741 F.2d 336 (11th Cir. 1984). Such liability would not be based upon notions of *respondeat superior*. The liability would be a result of the county's own policy. *See Berdin v. Duggan*, 701 F.2d 909, 913 (11th Cir. 1983). "However, if a constitutional tort committed by an employee of Prison Health Services was not a result of the policy or custom of the entity, then the county would not be liable." *Ancata*, 769 F.2d 700, 705, n. 8.

Thus, the inquiry becomes one of whether the government entity had any policy, ordinance, or regulation that could fairly be said to represent official policy that resulted in or played a role in the alleged delay of treatment and deliberate indifference shown towards an inmate. *See e.g. Berdin*, 701 F.2d 909, 914. Further, a plaintiff must plead more than a blanket allegation that a policy or practice exists. *See Taylor*, 2005 WL 1571912 at *4.

---

[1] A municipality may not assert the good faith of its agents as a defense to the liability. *See Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980).

[2] Plaintiff has not pled allegations identifying a specific policy or custom of PHS that resulted in Plaintiff's injury.

Plaintiff must specifically identify which policy or practice, if any, caused Plaintiff's alleged injuries.  *See id.*

Specifically, with respect to Plaintiff's claim that SCSO's policies or procedures resulted in the alleged violation of his constitutional rights, Plaintiff simply alleges:

> 94.    All failures addressed in the instant count resulted from the official policies, procedures and customs of the Defendant PHS and SCSO.

> 95.    The official policies, procedures, and customs of the Defendant PHS and Defendant SCSO directly and proximately caused the constitutional injuries suffered by GERRESE DANIELS.[3]

While Plaintiff has alleged a blanket allegation of a policy, practice or custom of SCSO, Plaintiff fails to specifically identify which policy, practice or custom[4], if any, caused Plaintiff's alleged injuries.  Plaintiff's blanket allegation of a policy , practice or custom of SCSO, without further specification, elaboration or substantive support, is insufficient to support a cause of action against SCSO under § 1983.

## C.    Section 1983 Claim - SCSO's Failure to Train

Count XI of Plaintiff's Amended Complaint appears to assert a cause of action under § 1983 based on the SCSO's failure to train PHS employees in the proper way to medically treat inmates.

---

[3] *See* Paragraphs 94 and 95 contained in Count XI of Plaintiff's Amended Complaint.

[4] The Eleventh Circuit has also stated that "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality."  *Wayne*, 197 F.3d at 1105.

"There are limited circumstances in which an allegation of 'failure to train' can be a basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387. "Specifically, '[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. *Id.* at 389. Therefore, in order to state a § 1983 claim for failure to train, Plaintiff must allege that: (1) Sheriff Balkwill knew of a need to train in a particular area, (2) Sheriff Balkwill made a deliberate choice not to do so, and (3) this failure to train constitutes a custom or policy, which was the moving force behind the deprivation of Plaintiff's constitutional rights. *See Noell v. White*, 2005 WL 2581611 (M.D. Fla. 2005); *see also Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) (stating that a municipality cannot be held liable for a failure to train unless it was on notice of a need to train in a particular area).

Plaintiff's Amended Complaint fails to allege that Sheriff Balkwill knew of a need to train in a particular area, that he made a deliberate choice not to do so and that his failure to train constitutes a custom or policy, which was the moving force behind the deprivation of Plaintiff's constitutional rights.

Additionally, "governmental policy generally cannot be established by evidence of a single incident. *Noell*, 2005 WL 2581611 at *9; *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). Plaintiff's allegations rest on an isolated incident without any evidence of a pattern of similar incidents and, therefore, cannot support liability under § 1983. *See Noell* at *9.

**IV.    Conclusion.**

In Count XI, Plaintiff asserts a § 1983 claim against Defendants, William Balkwill in his official capacity as Sheriff of Sarasota County.   A claim against a sheriff in his official capacity is equivalent to a claim against the county.  To assert a § 1983 claim against the county, Plaintiff must demonstrate the violation of a constitutional right caused by enforcement of a policy or custom of the county. Plaintiff fails to specifically identify which policy, practice or custom, if any, caused Plaintiff's alleged injuries.   Plaintiff's blanket allegation of a policy , practice or custom of SCSO, without further specification, elaboration or substantive support, is insufficient to support a cause of action against SCSO under § 1983.

Further, Count XI of Plaintiff's Amended Complaint appears to assert a cause of action under § 1983 based on the SCSO's failure to train PHS employees in the proper way to medically treat inmates.  Plaintiff's Amended Complaint fails to allege that Balkwill knew of a need to train in a particular area, that he made a deliberate choice not to do so and that his failure to train constitutes a custom or policy, which was the moving force behind the deprivation of plaintiff's constitutional rights.   Accordingly, Count XI of the Amended Complaint fails to state a claim against Defendant, William Balkwill in his official capacity as Sheriff of Sarasota County Sheriff's Office.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant, Sarasota County Sheriff William F. Balkwill's Motion to Dismiss Count XI of the Amended Complaint and Memorandum of Law (Dkt. #42) is GRANTED.

2.      Plaintiff may file a second amended complaint within twenty (20) days of the date of this order.

**DONE** and **ORDERED** in Tampa, Florida on February 10, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1392.mtd.wpd