# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**GERRESE DANIELS,**

     **Plaintiff,**

                                      **Case No.  8:05-cv-1392-T-30TBM**

**v.**

**PRISON HEALTH SERVICES, INC.,**
**et al.,**

     **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Matthew O'Kon's Dispositive Motion for Partial Summary Judgment or For Direction Narrowing Issues (Dkt. 115) and Statement of Undisputed Facts in support thereof (Dkt. 116), Plaintiff's Response in opposition to the same (Dkt. 144), Defendant Michelle Hole's Dispositive Motion for Summary Judgment (Dkt. 119), Plaintiff's Response in opposition to the same (Dkt. 143), Defendant Monica Welch's Dispositive Motion for Summary Final Judgment (Dkt. 125), Plaintiff's Response in opposition for the same (Dkt. 149), Defendant Sabrina Lasker's Dispositive Motion for Summary Final Judgment (Dkt. 127), Plaintiff's Response in opposition to the same (Dkt. 149), Sheriff William F. Balkwill's Motion for Partial Summary Judgment (Dkt. 139), and Plaintiff's Response in opposition to the same (Dkt. 150).  The Court, having considered the motions, memoranda, and supporting documentation, and being

otherwise fully advised in the premises, determines that (i) Defendant Matthew O'Kon's motion should be denied, (ii) Defendant Michelle Hole's motion should be granted in part and denied in part, (iii) Defendant Monica Welch's motion should be granted, (iv) Defendant Sabrina Lasker's motion should be denied, and (v) Defendant Sheriff William L. Balkwill's motion should be granted in part.

## Background

On or about June 5, 2003, Plaintiff Gerrese Daniels, an inmate at the Sarasota County Jail, was being prepared for transport to the Central Florida Reception Center (**"CFRC"**) in Orlando, Florida.  As a part of the process, Defendant Matthew O'Kon was taking inmates' fingerprints and having them sign property sheets.  The inmates were then directed to Defendant Michelle Hole, who was conducting iris scans for identification purposes.  Both O'Kon and Hole were employed as corrections officers with the Sarasota County Sheriff's Office.

During the process, O'Kon and Daniels got into an argument over a brownie.  O'Kon ordered Daniels to place a brownie he was carrying into his bag or throw it away.  Daniels refused and an argument ensued.  Ultimately, O'Kon agreed Daniels could keep the brownie.  Following this conversation, Daniels entered the iris scan room where he engaged in a similar argument with Hole over the brownie.  After being satisfied that O'Kon had allowed Daniels to keep the brownie, Hole directed Daniels to place his eye on the iris scan.  Daniels refused, which led to a profane verbal exchange between them.  Upon hearing the argument, O'Kon intervened, took Daniels by the arm, and began to escort him down the hallway.

According to Daniels, O'Kon and Hole pressed him against a wall and placed each of his arms behind his back in an arm bar hold.[1]  Daniels claims he could not physically resist due to the pain of the arm bar hold, but admits to shouting obscenities at the officers in protest.  Hole and O'Kon then began walking Daniels down the hallway toward a holding cell.  As they walked, both officers kept Daniels in an arm bar hold and bent him forward such that his torso was parallel with the ground.  Daniels claims that, while in this position, the officers forced him down the hall and intentionally rammed the top of his head into a concrete wall.

According to O'Kon and Hole, Daniels was loud, obnoxious, and resistant from the time they came in contact with him.  O'Kon claims that when he stepped into the iris scan room after hearing yelling, he observed that Daniels had a closed fist and was close enough to Hole to strike her.  When removing Daniels from the room, O'Kon grasped his arm and shirt collar to prevent Daniels from striking him.  After struggling down the hallway, O'Kon claims to have placed Daniels against the wall to change his grip to an arm bar.  At this point, Hole stepped in to assist, claiming to have seen Daniel's arms come up in a fighting stance. The officers claim they bent Daniels over in an attempt to gain leverage and control over him and to protect themselves.  Furthermore, Hole claims the officers did not intentionally ram or throw defendant into the wall.  Rather, she claims Daniels' head struck the wall while they

---

[1]At his initial deposition, Daniels testified that O'Kon and an unidentified male officer placed him in the arm bar holds.  However, Daniels now acknowledges that the other officer was Hole.

were struggling to maintain control of him as they escorted him to the holding cell.[2]

Following impact with the wall, Daniels fell to the ground.  When the officers demanded that he stand up, Daniels claimed that he could not.  The officers told him to stop playing around and that he could not avoid prison by faking an injury.  Daniels claims O'Kon stepped on his neck and then dragged him by his shirt approximately twenty to forty feet into a holding cell.  Daniels was limp and complaining to the officers that his neck was broken.  After seeing blood on the wall at the point of impact, Hole contacted the infirmary for assistance.

Defendant Monica Welch, a licensed practical nurse (**"LPN"**) initially responded to the request.  Prior to receiving the request, Welch was administering medicine to other inmates.  She had observed Daniels being uncooperative at the iris scan room but did not observe his impact with the wall.  Upon arrival, Welch observed Daniels lying on his back outside of the door leading into the holding cell.  At her deposition, Welch testified that she asked the officers twice what happened, but that they failed to respond.  Welch further testified that she was intimidated by them.  Welch observed Daniels moving his arms and head.  She used her shoe to rub the bottom of his foot, which he said he could feel.  Welch concluded that she could not assess Daniels on her own and that a nurse with more knowledge than an LPN should make a decision regarding his status.

---

[2] On or about June 7, 2003, O'Kon told an officer investigating the incident that if he had to "pick a reason" to explain why he put Daniels into the wall, it would be "just to show him that he was wrong and I was right."  Excerpt of Recorded Statement of Matthew O'Kon, June 7, 2003, at pages 6-7 (Dkt. 142-2).

Welch contacted Defendant Sabrina Lasker, a registered nurse and the supervising "charge nurse," who quickly responded to evaluate Daniels.[3]  Lasker claims Welch told her that Daniels had been walking down the corridor and "then decided he was paralyzed and tried to call a medical emergency.[4]"  Lasker also claims that, despite her inquiries, the officers refused to tell her what happened.  Hole maintains she informed Lasker of the altercation and the fact that Daniels hit his head on the wall.  At this point, Welch had left the scene and did not participate further in the assessment.

Lasker proceeded to conduct her assessment of Daniels.  She asked him how he got on the floor and if he had been in an altercation or hit his head.  Daniels told her he could not remember what happened.  Lasker claims that she then took his vital signs and had someone stabilize his neck.  With assistance, she "log rolled" him to check for bumps and/or bruises on his head.  She checked his pain reflexes, eyes, and grips.  Lasker observed that (i) he could move his arms and neck, (ii) when she pricked his foot with a syringe, he said he could feel it and moved his legs, (iii) his vital signs were normal, (iv) his eyes were reactive, (v) his grips were normal, and (vi) he had no scrapes, bumps, or bruises.  She determined that Daniels was neurologically intact and cleared him for travel.  She instructed the officers to use a wheelchair to transport Daniels, but returned to the infirmary before he was moved.

---

[3] Lasker and Welch were both employed by Prison Health Services, Inc., which was under contract with the Sarasota County Sheriff's Department to provide medical care to inmates.

[4] Lasker later testified that Welch's comment did not affect her assessment.

Michael O'Leary, a sergeant in the correctional division of the Sheriff's Office, responded to a report that Daniels was refusing to get up and claiming that he could not walk. He was aware Daniels had somehow fallen to the floor and that he had been cleared by a nurse but still refused to walk.  O'Leary claims Daniels told him "I can't walk," but did not explain why or describe his injury.  O'Leary, with the assistance of other corrections officers, took Daniels by his hands and feet to transport him to a van.  No wheelchair was used.  While being carried by the officers, Daniels' body made a U shape, with his buttocks dragging on the ground.  The officers propped Daniels in a seated position in the van.  Daniels claims he immediately fell over on his face when the officers let go, and that he remained in that position for a two and a half hour drive to Orlando.

Upon his arrival at the CFRC, Daniels advised officials that he was unable to move. The nursing staff placed him on a stretcher and placed a neck brace on him for transport.  He was evaluated at the Orlando Regional Medical Facility, where he was diagnosed with C4-5 bilateral locked facets and a cervical subluxation.  Despite subsequent surgery and treatment, the incident left him a quadriplegic with limited use of his legs, arms, and hands.  As a result, Daniels filed this lawsuit.

## Discussion

### I.  Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law.  Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

322 (1986).  The existence of some factual disputes between the litigants will not defeat an

otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986)(emphasis in original).  The substantive law applicable to the claimed causes of action

will identify which facts are material.  <u>Id</u>.  Throughout this analysis, the judge must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences

in his or her favor.  <u>Id.</u> at 255.

Once a party properly makes a summary judgment motion by demonstrating the

absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.   The evidence must be

significantly probative to support the claims.  <u>Anderson</u>,  477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage.

<u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." <u>Warrior Tombigbee</u>

<u>Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a

material fact is genuine and summary judgment is inappropriate if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248;

<u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a

conflict in substantial evidence to pose a jury question.  Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.  Legal Analysis

### A.       Matthew O'Kon

Defendant Matthew O'Kon seeks partial summary judgment as to Counts IV and VIII of Plaintiff's Second Amended Complaint concerning claims of excessive force arising from O'Kon's use of the arm bar hold.  The Second Amended Complaint alleges that O'Kon inflicted cruel and unusual punishment on Daniels by throwing him into the wall and stepping on his neck, but does not specifically allege O'Kon's use of the arm bar was cruel and unusual punishment.  However, Daniel's expert has opined that O'Kon's use of the arm bar constituted excessive force.  O'Kon seeks summary judgment on the basis of qualified or statutory immunity for any claim deriving from his use of the arm bar hold, or for an order from this court disallowing the issue of the arm bar hold to proceed.  O'Kon has not sought summary judgment on Counts IV and VIII as alleged in the Second Amended Complaint.

Daniels argues that he is not seeking damages for O'Kon's initial choice to use an arm bar hold, but for the continued use of the arm bar as Daniels was thrown into the concrete wall.  Moreover, Daniels argues that O'Kon's use of the arm bar hold cannot be viewed in isolation.  The Court agrees.  O'Kon cannot use the doctrines of constitutional or statutory immunity to parse his actions leading up to the collision into individual summary judgments. A jury should consider O'Kon's actions and the incident as a whole.  Accordingly, O'Kon's motion should be denied.

**B.     Michelle Hole**

As a preliminary matter, Daniels has conceded that summary judgment in favor of Defendant Hole is appropriate as to (i) Count VIII, and (ii) Count VII to the extent it relates to the use of excessive force.  Accordingly, the Court grants summary judgment in favor of Hole as to these claims.

Count VII alleges Hole violated Daniels' civil rights as protected by 42 U.S.C. § 1983. In addition to his now abandoned claim for excessive force, Daniels alleges Hole violated his right to receive adequate medical care for known serious medical needs in violation of the Eighth and Fourteenth Amendments.  The Eleventh Circuit and the Supreme Court have acknowledged that "deliberate indifference to [the] serious medical needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must satisfy an objective and subjective inquiry to show deliberate indifference to a serious medical need.  Id.  First, a plaintiff must set forth evidence of an objectively serious medical need.  Id.  Second, a plaintiff must prove a prison official acted with an attitude of "deliberate indifference" to that need.  Id.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994).  The Eleventh Circuit has clarified what a plaintiff must demonstrate to prove deliberate indifference.  See McElligot v. Foley, 182 F.3d 1248, 1255

(11th Cir. 1999).  A plaintiff must prove that the defendant: (1) had subjective knowledge of the risk of harm; (2) disregarded that risk; and (3) was more than merely negligent in disregarding that risk.  See id.  Even when medical care is ultimately provided, "a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable."  Id.

Material issues of fact exist which preclude an entry of summary judgment in favor of Hole.  Hole observed Daniels' head strike the wall and heard him complaining that his neck was broken. While Hole may have legitimately believed Daniels was faking an injury, a lay person observing the impact and the blood on the wall should recognize the necessity for a doctor's attention.  Although Hole did contact a nurse to assess Daniels' injuries, a material issue of fact has been raised as to whether she told the nurses what happened.  Both nurses assert that O'Kon and Hole denied them critical information regarding Daniels' injuries.  While Hole claims she described the incident to Lasker, Lasker claims neither officer responded to her inquiries.  A reasonable jury could determine that Hole's silence constituted an act of deliberate indifference toward Daniels' medical needs.  Thus, the remaining relief sought in Hole's motion must be denied.

### C.    Monica Welch

Daniels has conceded that summary judgment is appropriate as to Count V against Welch, which was a claim against Welch under 42 U.S.C. § 1983 for violation of Daniels'

right to receive adequate medical care.  Accordingly, the Court grants summary judgment in favor of Welch as to Count V.

Daniels maintains that a claim against Welch for medical negligence is still substantiated.  To prevail in a medical negligence action under Florida law, "a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed." <u>Gooding v. University Hosp. Bldg., Inc.</u>, 445 So. 2d 1015, 1018 (Fla. 1984).  Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury.  <u>Id.</u>

In a statement given during the original investigation of the incident, Welch indicated that prior to Hole's calling for a nurse, she saw him lying on the floor.  Rather than stop to see if he was injured, she stepped over him to continue administering medication to other inmates.[5]  Prior to receiving Hole's request, no one told Welch what happened or indicated that Daniels was injured.  Welch estimates that approximately ten minutes passed from the time she initially passed by Daniels to the time she received the request and returned to assess him.

Daniels argues that Welch was negligent because she let the officers "intimidate" her during her assessment, and because she did not immediately respond when she saw Daniels lying on the ground.  However, no evidence has been presented that the ten minute delay in any way caused or aggravated Daniels' injuries.  Further, because Welch did not feel

---

[5] See Witness Statement of Monica Welch, June 10, 2003 (Dkt. 147-2).

qualified to make a decision regarding Daniels' condition, she deferred the assessment to her superior.  When Lasker took over, Welch left the room and did not participate further in the assessment.  The decision to transport Plaintiff was made by Lasker.  No reasonable jury could conclude that Welch in any way breached a duty of care owed to Daniels or that her actions were the proximate cause of his injuries.  Accordingly, Welch's motion for summary judgment should be granted.

### D.    Sabrina Lasker

Daniels has alleged a claim against Lasker under 42 U.S.C. § 1983 for her violation of his right to receive adequate medical care (Count VI), and a claim for medical negligence (Count I).  Daniels also seeks punitive damages for his § 1983 claim.

Lasker argues that there is insufficient evidence in the record to show she acted with deliberate indifference towards Daniels' medical needs.  Her expert witness, board certified neurosurgeon Dr. James E. Wilberger, has opined that her neurological assessment of Daniels was appropriate.  Further, Dr. Wilberger opined that he had no problem with her clearing Daniels for transport on the basis of the lack of information he believed she had at the time.

However, a material issue of fact exists as to what information Lasker had at the time she assessed Daniels.  Two witnesses, Hole and Daniels, have testified they told Lasker that Daniels' head was run into the wall.  Daniels points out that, according to Dr. Wilberger, had Lasker known Daniels' head hit the wall and that he could not move his legs, she should have immobilized his neck.  Further, Dr. Wilberger indicated she should have immobilized his neck if she even suspected injury to the spine.  Knowledge that Daniels's head had been run

into the wall would warrant such suspicion.  Dr. Wilberger also testified that had Daniels' injury been properly diagnosed and treated prior to being transported to Orlando, he would have likely made a full recovery.

A reasonable jury could find that the medical treatment provided by Lasker was so cursory as to amount to no treatment at all.  See Kimbrough v. City of Cocoa, 2006 WL 2860926, *4 (M.D.Fla. October 4, 2006).  A jury should determine whether (i) Lasker was aware Daniels' head had struck the wall, (ii) if not, whether her inquiry as to what happened was appropriate, and (iii) whether, based on the knowledge she had during the assessment, her clearing Daniels for transport without immobilizing his neck or stabilizing his spine constituted deliberate indifference to his medical needs.  Thus, Lasker's motion for summary judgment should be denied as to Count VI.

In Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1630 (1983), the Supreme Court held that a "jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  While there is no evidence that Lasker acted with evil motive or intent, a reasonable jury could conclude that her actions constituted reckless or callous indifference to Daniels' medical condition.  Accordingly, Lasker's motion for summary judgment should also be denied regarding Daniels' claim for punitive damages.

As to Daniels claim for medical negligence, a reasonable jury could conclude that Lasker breached the applicable standard of care.[6] Unlike with Welch, Lasker made the final assessment of Daniels and cleared him for transport without immobilizing his neck or stabilizing his spine.  Daniels has presented evidence that his subsequent transport, in addition to his contact with the wall, was a proximate cause of his injuries.  Thus, a reasonable jury could conclude that Lasker was negligent under Florida law.  See Gooding, 445 So. 2d at 1018.

### E.      Remaining Defendants

Daniels has also asserted claims against Prison Health Services, Inc. (**"PHS"**), and William Balkwill, in his official capacity as Sheriff of the Sarasota County Sheriff's Office (the **"SCSO"**).  These defendants have also moved for summary judgment.  Daniels has conceded that summary judgment is appropriate as to Count IX against the SCSO, which is a claim for failure to train relating to the actions of O'Kon and Hole.  Thus, the Court will grant summary judgment in favor of the SCSO as to Count IX.  The remainder of the claims addressed by PHS and SCSO in their motions for summary judgment have been set for oral argument.

It is therefore ORDERED AND ADJUDGED that:

---

[6] Susan Dean, Lasker's correction care nursing expert, has opined within a reasonable degree of medical certainty that Lasker did not deviate from the accepted standard of care in conducting an "emergency" or "man down" assessment.  Due to the evidence in the record and questions of fact regarding Lasker's awareness of the altercation, the consideration of Dean's testimony is better left to a jury.

1.      Defendant Matthew O'Kon's Dispositive Motion for Partial Summary Judgment or For Direction Narrowing Issues (Dkt. 115) is **DENIED**.

2.      Defendant Michelle Hole's Dispositive Motion for Summary Judgment (Dkt. 119) is **GRANTED in part and DENIED in part** as set forth herein.

3.      The Clerk is directed to enter Partial Summary Judgment in favor of Michelle Hole as to the following counts of the Second Amended Complaint: (i) Count VIII in full, and (ii) Count VII as it relates to Hole's alleged use of excessive force.

4.      Defendant Monica Welch's Dispositive Motion for Summary Final Judgment (Dkt. 125) is **GRANTED**.

5.      The Clerk is directed to enter Partial Final Summary Judgment in favor of Monica Welch as to all of Plaintiff's claims.

6.      Defendant Sabrina Lasker's Dispositive Motion for Summary Final Judgment (Dkt. 127) is **DENIED**.

7.      Defendant Sheriff William F. Balkwill's Motion for Partial Summary Judgment (Dkt. 139) is **GRANTED in part** as set forth herein.  The remaining relief sought in this motion has been set for oral argument.

8.      The Clerk is directed to enter Partial Summary Judgment in favor of William

Balkwill as to Count IX of the Second Amended Complaint.

**DONE** and **ORDERED** in Tampa, Florida on December 4, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1392.msj individual defendants.frm