**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**GERRESE DANIELS,**

    **Plaintiff,**

                                                Case No.  8:05-cv-1392-T-30TBM

**v.**

**PRISON HEALTH SERVICES, INC.,
et al.,**

    **Defendants.**
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant Prison Health Services, Inc.'s (**"PHS"**) Dispositive Motion for Summary Final Judgment (Dkt. 126), Plaintiff Gereese Daniels's (**"Plaintiff"**) Response in opposition to the same (Dkt. 148), Defendant Sheriff William F. Balkwill's, in his official capacity as Sheriff of the Sarasota County Sheriff's Office (the **"SCSO"**), Motion for Partial Summary Judgment (Dkt. 139), and Plaintiff's Response in opposition to the same (Dkt. 150).  The Court, having considered the motions, supporting memoranda and documentation, and being otherwise fully advised in the premises, determines that (I) the SCSO's motion should be granted, and (ii) PHS's motion should be granted in part and denied in part.

## Background

On December 4, 2007, the Court entered an Order disposing of the motions for summary judgment filed by the individual defendants in this case.[1] As part of that Order, summary judgment was granted in favor of the SCSO as to Count IX of Plaintiff's Second Amended Complaint. The remainder of the claims addressed in the instant motions were set for oral argument, which was held on December 5, 2007. At the close of oral argument, the Court provided the parties with twenty (20) days to supplement the regarding whether Defendant Sabrina Lasker had final policymaking authority over medical decisions at the Sarasota County Jail. The parties have responded accordingly. The Court will now consider those responses in conjunction with the pending motions.

## Discussion

**I. Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[1] The summary of facts and issues included in the Court's December 4, 2007 Order (Dkt. 160) is incorporated herein by this reference.

(1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  Id.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor.  Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial."  Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question.  Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II. Legal Analysis**

    **A.    Section 1983 Claims**

In Count XI of the Second Amended Complaint, Plaintiff alleges PHS and the SCSO violated 42 U.S.C. § 1983 by failing to provide constitutionally adequate medical care to Plaintiff. Plaintiff further alleges that such failure resulted from the official policies and/or customs of PHS and the SCSO. The defendants argue Plaintiff has failed to provide evidence that such customs or policies existed.

The United States Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978). Rather, it is "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S., at 694, 98 S.Ct., at 2037-38. Municipal liability attaches under § 1983 "where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300 (1986). The term "official policy" often refers to "formal rules or understandings - often but not always committed to writing - that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time." 475 U.S., at 480-81, 106 S.Ct., at 1299. In the absence of an express policy, "a

plaintiff can establish liability under § 1983 by identifying a "widespread practice that . . . is so permanent and well settled to constitute a custom and usage with the force of law." Cuesta v. School Board of Miami-Dade County, 285 F.3d 962, 966 (11th Cir. 2002) (additional citations omitted).

As discussed by the Eleventh Circuit in Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989), municipal liability for a § 1983 claim

> may attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question. Under this theory of municipal liability, the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit. *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 736, 109 S.Ct. 2702, 2723 (1989). As already discussed, this is a question of law to be resolved by the trial court judge. *Id. See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123-24, 108 S.Ct. 915, 924. In making this determination, the court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law. *Jett,* 491 U.S. at 737, 109 S.Ct. at 2724. *See Pembaur,* 475 U.S. at 485, 106 S.Ct. at 1301 (county prosecutor found to be final policymaker based in part on relevant operational practices). *See also Williams v. Butler,* 863 F.2d 1398, 1403 (8th Cir.1988) (in banc) (plurality opinion), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). The court must also ensure that the municipal official possesses the authority and responsibility for establishing *final* policy with respect to the issue in question. *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926; *Pembaur,* 475 U.S. at 483-84, 106 S.Ct. at 1300. Only after this determination is made is the second step of the inquiry relevant: Did the challenged decision or act of the official cause the deprivation of the plaintiff's rights?

In <u>Mandel</u>, the Eleventh Circuit held that a physician's assistant was a "final policymaker" with respect to medical affairs at a county prison, and that his acts of deliberate indifference could be attributed to the local municipality for purposes of establishing liability under § 1983. <u>Id</u>. at 794. Although it was originally contemplated that the physician's assistant would be supervised by a medical doctor, a custom and practice developed such that he was subject to no supervision or review. <u>Id.</u> at 785. In determining that the physician's assistant was a "final policymaker," the Eleventh Circuit reasoned that this custom and practice established a policy authorizing the physician's assistant to make medical decisions without any supervision or review unless he, in his sole and unsupervised discretion, deemed it appropriate. <u>Id.</u> at 794.

In the instant case, Plaintiff has not provided evidence of a written policy that would direct or condone the conduct at issue. Plaintiff's § 1983 claims against the SCSO are based on the conduct of (I) its correction officers (**"COs"**), Matthew O'Kon and Michelle Hole, and (ii) Sabrina Lasker, a nurse employed by PHS. Plaintiff's § 1983 claims against PHS are also based on Nurse Lasker's conduct.

As to the COs, Plaintiff argues that a "don't ask" policy or rule was established by either PHS or the COs whereby nurses did not ask the COs what happened following an incident. Plaintiff alleges the purpose of this "don't ask" policy was to restrict the sharing of information that could adversely reflect upon the COs. As a result, information critical to the medical care of the inmates was also restricted. Plaintiff supports this argument with

testimony from Monica Welch, who stated that she was intimidated by the COs and did not ask them what happened to Plaintiff because it was "[k]ind of something you understand. You don't ask." (Witness Statement of Monica Welch, June 10, 2003 at 8, Dkt. 148-2; Welch Deposition at 24-25). Plaintiff offers no other evidence to support its argument that such conduct resulted from a "policy or practice" of the SCSO.

Plaintiff also argues that Lasker was a "final policymaker" with respect to certain medical decisions at the jail. Plaintiff argues Lasker made the decision to clear him for transport without consulting other medical professionals, and that her decision was not reviewed by a higher authority. As a result, Plaintiff argues Lasker was either the final policymaker regarding which prisoners were cleared for transport, or the subordinate to whom such authority was delegated. In support of this argument, Plaintiff has cited to the deposition testimony of Lasker and Welch. Both nurses testified that, at the time of the incident, Lasker was the "charge nurse" or "charge R.N." in charge of the facility. According to Welch, the charge nurse was responsible for clearing inmates for transport. Welch also testified that there was a medical doctor available at the prison, though not on site at all times, and a nurse practitioner who came in on a regular basis.

Both the SCSO and PHS argue Lasker had no final policymaking authority over medical decisions at the Sarasota County Jail. The SCSO has filed an Affidavit of William F. Balkwill (Dkt. 173), in which Balkwill describes the SCSO's Health Services Agreement (the **"HSA"**) with PHS. Pursuant to the HSA, PHS agreed to provide a physician and health

services administrator to oversee medical care at the Sarasota County Jail. PHS was required to maintain policies and procedures, which were reviewed by a medical director and a health services administrator. Pursuant to those policies and procedures, the medical director was delegated the authority to make judgments regarding an inmate's health care needs. The responsible health authority for the facility was the health services administrator. According to Balkwill, Lasker did not have the authority to make official policy and was not a final policymaker for PHS or the jail, however she was permitted to exercise discretion in providing medical care to inmates.

Balkwill's Affidavit is supported by the Affidavit of Scott Kennedy, M.D., a district medical director for PHS and the site medical director for the Sarasota County Jail. According to Dr. Kennedy, Lasker was not a policymaker for PHS. Rather, Dr. Kennedy, as the site medical director, had policymaking authority. Such authority is evidenced by portions of the General Policy & Procedure Manual for the jail, wherein each policy/procedure is approved by Dr. Kennedy. Specifically, Policy/Procedure Number G118 states that the health administrator is "responsible for the overall operation of the health service program," and that the medical director is "responsible for making and reviewing all medical decisions."

Upon review of the record, the Court has been unable to identify an official policy or custom that caused the injuries alleged by Plaintiff. It cannot be reasonably concluded that Welch's comments regarding the "don't ask" policy reflected an official policy or custom of

PHS or the SCSO. Moreover, Plaintiff has failed to provide evidence that the "don't ask" policy was a widespread practice so permanent and well settled to constitute a custom and usage with the force of law.

Furthermore, Plaintiff has failed to provide evidence that Lasker was delegated policymaking authority regarding medical decisions at the jail. Such authority was clearly delegated to the medical director and/or the health administrator. The instant facts are distinguishable from both Mandel and Kimbrough v. City of Cocoa, 2006 WL 2860926 (M.D. Fla. October 4, 2006), also cited by Plaintiff. In Kimbrough, the court held a PHS medical director, not a nurse, had final policymaking authority regarding medical decisions at a detention center. Id. at * 5. While Plaintiff has argued Lasker's specific decision to transport the Plaintiff was not reviewed, he has not provided evidence that Lasker regularly operated without any supervision or review by the medical director, or that such a custom had developed at the Sarasota County Jail. This is distinguishable from Mandel, where a custom had developed such that the physician's assistant's medical decisions were not subject to any supervision or review. As the record reflects Lasker operated under the supervision and review of the medical director, and as she was not delegated the authority to make policy, it cannot be reasonably concluded that she was a final policymaker regarding medical decisions at the jail.

Absent evidence of an official policy or custom, and absent evidence Lasker possessed final policymaking authority, neither the SCSO nor PHS are subject to liability under § 1983.

Accordingly, summary judgment is appropriate in favor of the SCSO and PHS as to Plaintiff's § 1983 claims.

### B.     Remaining Claims

Plaintiff has also asserted a direct claim against PHS for medical negligence (Count I), and a claim for damages based on PHS's vicarious liability for the negligence of its employees (Count III).[2]  In the December 4, 2007 Order (Dkt. 160), the Court denied Lasker's motion for summary judgment as to Plaintiff's negligence claim.  For the reasons stated therein, the Court denies SCSO's motion for summary judgment as to Counts I and III.

It is therefore ORDERED AND ADJUDGED that:

1.     Defendant Sheriff William F. Balkwill's Motion for Partial Summary Judgment (Dkt. 139) is **GRANTED** as to Count XI of the Second Amended Complaint.

2.     Prison Health Services, Inc.'s Dispositive Motion for Summary Final Judgment (Dkt. 126) is **GRANTED in part and DENIED in part** as set forth herein.

**DONE** and **ORDERED** in Tampa, Florida on January 8, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-1392.msj phs and scso.wpd

---

[2] Plaintiff has also alleged additional claims against the SCSO.  The SCSO has not moved for summary judgment on these claims.